This morning is Hyland against Liberty Mutual. The issue before the court this morning in this case is what is the appropriate measure of damages under Illinois law? Mr. Sitzer, before we get into the merits, I have a couple of questions about jurisdiction. The first is, do we have a final judgment? Yes, Your Honor, we do. The district court's opinion did not... I didn't ask whether we had a final opinion. I asked whether we had a final judgment. Yes, Your Honor, we addressed this in the pre-appeal briefing. The district court's judgment did not contain a monetary amount, but the opinion did, and it was very clear from the opinion what the... That might be a good reason to tell the district court it needs to enter a final judgment. Well, Your Honor, I think that... This document dated August 8th is not a proper judgment and that he needs to enter one. Your Honor, all the parties agreed that the judgment was final because the amount in the opinion was fixed, and I think the case law... The parties can agree about that until they're blue in the face, but this is not a final judgment. The question, the technical question, is whether this is the sort of case in which it is permissible to appeal under banker's trust against malice, even though the district court has never entered a final judgment. Now, you might want to discuss that, but this thing is not a judgment. Well, Your Honor, the court determined that its order was final and disposed of the case, and in its opinion, it monetized the amount that Liberty Mutual was ordered to pay and then entered a judgment on its opinion thereafter. I've just invited you to make an argument based on banker's trust against malice. Do you want to do that? Your Honor, I'm not prepared to make that kind of an argument, but we had addressed this before the appeal in briefing that Your Honors had asked for, and no... The next jurisdictional question in this case is whether there is subject matter jurisdiction in the district court given 28 U.S.C. 1332c1a, which says that in any direct action against an insurer, the citizenship includes the state of citizenship of the insured, and that would be Smith. We don't have any information about Smith. Is this a direct action for purposes of 1332c1a? Yes, Your Honor. The citizenship of the parties in interest in the case, one of which is Ms. Highland, which received an assignment of the claim from Ms. Smith, is an Illinois resident. Ms. Smith is an Illinois resident. Liberty Mutual fire is a... Well, then, if Highland and Smith are both citizens of Illinois, and that's the question, citizens, not resident, if they're both citizens of Illinois and this is a direct action, then there is no subject matter jurisdiction in this case. Is Your Honor suggesting then that there was no subject matter jurisdiction in the district court case? That's what subject matter jurisdiction means. The parties proceeded based on... Have you given any thought to the effect of 1332c1a? It was never an issue below, Your Honor, and the district court didn't raise it. The parties agreed that complete diversity existed. Agreement that diversity exists is not sufficient. You seem to be relying on agreement for both appellate jurisdiction and diversity jurisdiction, and both of them. The Court of Appeals has to raise on its own and decide without regard to what the parties have agreed. I think that it will be essential in this case to have supplemental jurisdictional briefs. This is very disappointing given that the court has already directed supplemental jurisdictional filings, which just haven't covered the waterfront here. Yes, Your Honor, and we certainly apologize for that, but we had no indication after the initial briefs were filed by both sides that the court had additional questions with regard to jurisdiction. We proceeded with the appeal and the briefing of the appeal in that regard, and I guess, with all respect to Your Honor, if there had been a jurisdictional concern after those initial briefs had been filed in the appellate court, we respectfully would have thought that the court would have made... I've just done it. We only look at these so many times before argument, and as I say, it's disappointing to get to argument and find that the jurisdictional issues are still hanging even after a jurisdictional briefing order. Well, Your Honor, would you like me to continue with the appeal? Please do. This is your only shot. I'm going to ask you a question to start you off, if I might, because the district court appears to have based its holding on the determination that the case would never have been filed against Smith at all if Liberty Mutual had properly proceeded by seeking a declaratory judgment as to its obligation to defend. Is that a proper focus, or are we limited to determining only whether a defense would have made a difference in the lawsuit itself rather than in the decision to file the lawsuit? Well, with respect, I don't think that the argument was that the decision to file the lawsuit would never have been made. I think the plaintiff is arguing that her decision to actually proceed with the lawsuit to default judgment would never have been made had Liberty not defended. Liberty's determination that a defense wasn't necessary here, which admittedly was mistaken,  so that determination, I think, would not have been made at the outset. I also have been wondering, wouldn't it be an issue for the jury whether the plaintiff would have settled for the policy limits rather than proceeded to obtain a judgment for $4.5 million, particularly given that the plaintiff was very well aware that Smith was indigent and totally judgment-proof? Right, Your Honor. There would be an issue of fact, and there is nothing in the record to support Hyland and her lawyer's argument that she would have not proceeded with the case or accepted the policy limits, but there had been no attempt by plaintiff's lawyer to actually ask for limits. There was no settlement offer of any nature that had been offered prior to going to judgment. Your Honor, the issue, I believe, the legal issue before the court, with respect to Your Honor's jurisdictional concerns, is what is the appropriate measure of damages under Illinois law when an insurer breaches its duty to defend, but where no bad faith is alleged under Illinois Assurance Code, Section 155, or where the insurer is not alleged to have breached any duty to settle or committed any other tort that is separate and independent from its contractual obligations under the policy, such as fraud. Here, the district court erred when it permitted the policyholder, or in this case, an uninsured defendant who was claiming under Liberty Mutual's policyholder's policy and then assigned her claim to Hyland. When it permitted that claimant to recover damages awarded against her that were nearly 200 times more than the $25,000 policy limits in the absence of any bad faith. The settled law in Illinois for decades has been that absent a meritorious Section 155 claim, failure to properly consider a demand to settle within limits, which is what Your Honor, Judge Rovner had asked, or commission of a tort that is separate and independent from the insurer's contractual obligations under the policy, such as fraud, none of which, undisputably, were alleged in this case. An insured's recovery for failing to defend is framed by the policy limits. These are the only three exceptions recognized by the Illinois legislature via Section 155 and the Illinois Supreme Court under which an insured may be entitled to recover above a judgment above the limits of the policy. While, as I mentioned, Liberty Mutual conceded it should have provided a defense in this case, Illinois law is clear that the penalty for an insured mistakenly declining to defend in the absence of any bad faith or tortious conduct, again, none of which was alleged here, is that its penalty is that it is stopped from relying on its policy defenses and exclusions. Here, that meant that by mistakenly declining to defend, Liberty lost the ability to rely on its policy exclusion to prove that the driver, Ms. Smith, again, not its policy holder, that the driver was never given permission by Liberty Mutual's policy holder to use the vehicle. And this is the district court's error, but being stopped from relying on those defenses does not extend to somehow waiving the policy limits of the policy, which is the essence of the insurance contract between Liberty Mutual and its policy holder. No Illinois case has ever held this, that the estoppel waiver rule applies to negate an insurer's policy limits. And the district court, in rendering that decision and making that finding, did not cite to any relevant authority in Illinois or this circuit to support this holding. An insurance policy is a contract to provide risk protection up to a certain amount, and it's subject to terms and conditions and exclusions, all of which have to be settled in order to obtain the bargain for coverage, but the fundamental essence of the insurance contract is the amount of the bargain for coverage. To illustrate the seriousness and the depth of the district court's error, the district court granted damages in this case against Liberty Mutual that are orders of magnitude more than the Illinois legislature has deemed would be available had Liberty actually committed bad faith under Section 155, which again was never alleged. This was pleaded as a straight breach of contract case. To further illustrate the error in reaching the severe result that it reached, again, a judgment that is when interest is counted more than 200 times the limits of the policy, and in arguing for affirmance of that opinion here, neither the district court or Highland ever mentioned once Section 155 or the leading Illinois Supreme Court on the availability of extra contractual damage, the Kramer case, which is cited in our brief, let alone tried to square those authorities and that argument with the preemption of Illinois Insurance Code Section 155. I see my time is running a little low. I'd like to reserve the last minute, Your Honors. Certainly, Counsel. Go ahead. Excuse me. I'd like to reserve the balance of my time. Yes, certainly, Counsel. Mr. O'Shaughnessy. May it please the Court, I am Patrick O'Shaughnessy on behalf of the plaintiff in this case, Shannon Highland. From the beginning here, I don't have a response to the jurisdictional questions asked by Judge Easterbrook either and would not be prepared to argue those today for the same reasons. It's a basic rule in litigation that the lawyers must be prepared on matters of subject matter and appellate jurisdiction. It is your duty, the duty of Mr. Sitzer, to research, look this up, have an opinion on it. I mean, not to read sections of the diversity jurisdiction statute applicable to insurance companies is, well, not consistent with your duty as a member of the Bar. I understand that comment and that duty. It seems as though I did the same thing as Mr. Sitzer. In preparing for this, I reviewed the earlier jurisdictional submissions we had. You had to look at this. You had to look at 1332C1A in the district court. As soon as this case began, it is labeled Highland against Liberty Mutual. How can you file this case without looking through what the diversity jurisdiction statute says about jurisdiction with respect to insurance companies? I understand. The remainder of my time, I'm going to spend addressing the specific points made by Mr. Sitzer in his opening argument today. I'm not going to go through all the ins and outs of the brief. I'd appreciate asking a question, please. Okay. Was there any evidence at all that it would have avoided liability or minimized damages attributable to the incident? Because it seems to me that that would be the proper focus, where liability is premised on the failure to defend. Let me see if I understand your question, Judge Rovner.   is a person who is a member of the Bar Association. would be seeking the amount of damages in the verdict that were put there because there wasn't a defense attorney to argue the other side? Right. Okay. I have in my mind that that's a very gray, murky area. Because the deletory case that we've both cited actually goes to that issue. It calls that the trick bag. How could a plaintiff, and with what possible evidence, could you prove that if we reset this game board, did the whole trial over again, but this time put a defense attorney there, what difference would it have made? Now, it likely would have made a difference. Just suggesting an alternative verdict to the judge or the jury, cross-examining any witness, could do that. But it's nearly impossible to calculate. You couldn't do it without actually redoing everything. But it's already been changed. So that's why the approach that we think is more solid in this case is to make the argument, and we think it's very good here, that the whole process would not have happened, that there would not have been a default judgment against McQuasia-Smith because there is no reasonable, logical manner in which it could have gotten to that point if Liberty Mutual had not breached the duty to defend. See, this is what I don't understand. Why should it matter, as the district court held, that the plaintiff might not have sued Smith at all if Liberty had obtained a declaratory judgment that it was not obligated to defend? I mean, how is that material to assume premise on the failure of the duty to defend? Didn't that duty arise only after the plaintiff concluded to file the lawsuit against Smith? My answer to that question is that issue is material for the purposes of demonstrating the proximate cause analysis that is brought up by the Conway case and the Reese case below it because it's incumbent upon the plaintiff in this case to show what damage was proximately caused by Liberty Mutual's breach, especially when you're talking about the amounts over their policy limits of $25,000. And our argument is that the entire judgment was proximately caused by their breach because the judgment would not have happened. Now, the lawsuit was already filed. The lawsuit was filed before there was even communication between the parties, before there was even a single statement made or taken by Liberty Mutual. The lawsuit was filed quickly because of the magnitude, just the manner in which our office handled these. What we're saying is that through Liberty Mutual, if they had done their job, there's no reasonable permutation from that point that McQuasia-Smith would have ever had a judgment against her. And primarily it's because of the existence of this uninsured and underinsured motorist coverage. Plaintiff has their eyes on the underinsured coverage. And the Liberty Mutual case, with its $20,000 or $25,000 policy, really is just a speed bump in that approach. There's never been a reason or a goal to seek a judgment against McQuasia-Smith because to do that, you would actually have to have a belief you can collect it. And if you got that judgment, the first $100,000 of its collection has to be handed back to Progressive Insurance. Now McQuasia-Smith is a teenager. She is now a convicted felon because of this accident. That type of recovery has no plausibility whatsoever. The big issue also... Again, maybe... Well, okay. It seems to me that the question is not whether the deeper pockets of Liberty made a lawsuit worthwhile, which was, of course, the District Court's focus. It seems to me that it is whether the failure to provide defense counsel to Smith would have resulted in a lower damage recovery. That is an argument. That argument was talked about in De La Torre. The problem with something like that, as I see it, is how could it ever prove or quantify what that difference would be? It would be entirely guessing that if we say if Mr. Sitzer would have showed up at the default hearing or defended her at trial, what would a jury have awarded? No one can come up with that number. It's guessing. Even speculative expert witnesses would be throwing numbers out because it didn't happen and you can't go back and make it happen to quantify that difference. That's why, in my opinion, that issue is almost unprovable. But what we can prove is even a simpler prospect, not that the amount would have been higher or lower, but it never would have happened because there's no point in it happening. To go after McQuasia-Smith for a default judgment, if Liberty Mutual had not breached their duty to defend, you would actually have to be spending Montiel Highland's money. He has a traumatic brain injury. He has $100,000 in uninsured motorist protection. And if we're going to go after McQuasia-Smith, you have to start spending that money with no belief that you'll ever see it again. It's gone and you wouldn't waste his resources on that. The issue with the estoppel I really want to bring up too because this is a fairly critical issue that I think is being somewhat misrepresented. Judd Shadid, in his district court opinion, did have the one sentence that mentioned estoppel with regard to the policy limits. Liberty Mutual puts a great deal of attention on that in their brief and they bring it up in their argument as well. This is, in my mind, a mistaken sentence in the district court opinion. The sentence does not make sense contextually. The next sentence that says, for example, doesn't even follow. And most importantly, at no point in his decision is Judge Shadid making this call based upon estoppel with regard to the policy limits. The conclusion is quite clear. Estoppel is referring to policy coverage and exclusion. He never makes it for policy limits. So this is a harmless error and an argument from fallacy that comes from it. The last major issue I want to get to is on the issue of the Section 155 damages and it is absolutely correct, they were not pled because this isn't really the case for them to be pled. The Kramer case that's argued by Liberty Mutual here is really not the point. Kramer talks about it in the context of a first person insurance loss where the loss has already occurred, a first party claim. So in that case, if an insured has a small loss, for example in Mr. Kramer's case of about $6,000, and he presents it to his insurance company and they say no, then his remedy under contract law is to sue his insurance company. But contract law doesn't give you the remedies of attorney's fees or punitive damages. So in small cases like that, there is little economic incentive to bring the claim. And as Kramer explains, that is why the legislature passed the Section 155 because it gives extra contractual damages to give the economic incentive to bring a claim like that. And this is where I think it's being misapplied. First of all, Kramer never even uses the words duty to defend. Its entire reference is into its arguments. Where it becomes relevant is, I believe Liberty Mutual is talking about Kramer's analysis where they talk about contractual remedies. And what that means in the analysis is remedies under contract law. And they're changing that to contractual limits, meaning the limits of the policy involved in the contract. Because the one thing that's clear under contract law is the rules don't change when you deal with an insurance company. It's still contract law. And what we're faced with here is, I think the cases are clear. I disagree with Liberty Mutual. I believe this court disagrees with Liberty Mutual's arguments when it had the Green versus J.C. Penney's case. Conway and Rees both express, borrowed from California law, that the measure of damages is not inexorably imprisoned in the policy limit. Instead, properly it is measured by the consequences caused by that breach. So the application of contract law here would allow McQuasha-Smith to have a claim for all damages proximately caused by the breach. That has been shown to be the judgment, the interest, even though it goes beyond the policy limits. Because the proper evidence has been made to show that it was caused by the breach of contract. And that's what this comes down to. The policy limits in a case like this act as a wall. What stands in front of you is the damages under the policy limits. What's on the other side of the wall are the damages in excess of the limits. A stopple was not used in this case. A stopple would knock the wall down and say it doesn't exist anymore. That's not what happens. The wall is still there. You need evidence to go over the wall to show that those damages on the other side of the policy limits were caused by the breach. In this case, I believe they have. So for those reasons, we pray that this court affirm the summary judgment order. Thank you, Counsel. Anything further, Mr. Setzer? Yes, Your Honor. And may I briefly begin this portion by mentioning on page two of our brief the finality issue, Your Honor, we addressed by citing the Exelon case, the Seventh Circuit Exelon case, which holds that the final disposition, if the final disposition of the case can be affirmed from the district court order rather than the judgment, then the appeal may go forward despite technical shortcomings. It is plain here that the underlying district court order and opinion had monetized the judgment and finished the case, in which case, as Exelon holds the appellate court jurisdiction and the finality of the opinion is complete and the With respect to Liberty Mutual, it is a Liberty Fire, it is a Wisconsin incorporated Thank you, Counsel. The court directs parties to file supplemental briefs within 14 days addressing the questions whether there is appellate jurisdiction and whether there is subject matter jurisdiction. The appellate jurisdiction question should address this court's holding from February 9 in Cook against Jackson National Life Insurance Company and the Supreme Court's holding in Banker's Trust against Malice. The portion of these briefs concerning subject matter jurisdiction should address 28 USC 1332 C1A. And when those things have been received, the case will be taken under advisement. The court will take a short recess before calling the third case.